# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## STATE OF TENNESSEE  v. JEFFREY WAYNE ROWE

**Appeal from the Circuit Court for Marshall County**
**Nos. 2013-CR-22, 2013-CR-23, 2013-CR-24,     Forest A. Durand, Jr., Judge**
**2013-CR-25, 2013-CR-26**

---

**No. M2013-02341-CCA-R3-CD - Filed June 11, 2014**

---

The defendant, Jeffrey Wayne Rowe, pleaded guilty to four counts of aggravated burglary, one count of attempted aggravated burglary, one count of vandalism, and two counts of misdemeanor theft, and the Marshall County Circuit Court sentenced him as a Range I, standard offender to a term of 10 years' imprisonment.  On appeal, the defendant challenges the manner of service of his sentence.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

William J. Harold, Assistant District Public Defender, for the appellant, Jeffrey Wayne Rowe.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In February 2013, the Marshall County grand jury charged the defendant, in five separate indictments, with multiple burglary-related offenses, all occurring within a nine-week time period in the summer of 2012.  In case numbers 2013-CR-22, -24, -25, and -26, the defendant was charged with one count each of aggravated burglary and two counts each of misdemeanor theft, and in case number 2013-CR-23, the defendant was charged with one count of attempted aggravated burglary and one count of vandalism.  On August 21, 2013, the defendant entered open and best-interests pleas of guilty to the following: in case number

2013-CR-22, aggravated burglary; in case number 2013-CR-23, attempted aggravated burglary and vandalism; in case number 2013-CR-24, aggravated burglary; in case number 2013-CR-25, aggravated burglary and one count of misdemeanor theft; and in case number 2013-CR-26, aggravated burglary and one count of misdemeanor theft. The trial court dismissed the remaining theft charges, and the plea agreement left sentencing to the trial court's discretion.

At the plea submission hearing, the State offered the following facts in support of the plea:

> Starting with case number 13-CR-22.
>
> The offense date is June 25, 2012. That was the residence of Jason and Lisa Crabtree located . . . here in Marshall County.
>
> They discovered that their home had been broken into and some items taken. It was principally prescription medication and a small amount of money that was taken from a UT piggy bank.
>
> The defendant and the victim Jason Crabtree are cousins.
>
> A neighbor was interviewed and observed a small green car at the residence.
>
> Later on law enforcement actually got a picture of the defendant's car which was a green Geo Metro. The neighbor was shown that picture and said that is the car.
>
> Of course the Crabtrees would say they did not give permission for their home to be broken into or their items to be taken.
>
> [In] case number 13-CR-23, that offense date is August 22nd, 2012. This is the attempted aggravated [burglary] and vandalism. I believe there was some damage done to a door. This is the residence owned or occupied by Thomas McLean . . . here in Lewisburg.

The defendant lived nearby.

Once law enforcement investigated this matter they actually observed foot prints in the yard which appeared to be going from the victim's residence back to the defendant's residence. He was ultimately interviewed and gave a written statement admitting going to the residence and attempting to enter in and was about to enter it and I believe observed head lights and so he went back home without taking anything. He said that the purpose for going in there was to get money or something that he could convert to money.

Case number 13-CR-24, that offense date is August 27, 2012. This was the home of Clarissa Carter . . . here in Lewisburg.

There was – the home was broken into without permission and prescription medicine was taken.

Once the police department investigated this matter they ultimately took the defendant with them and he pointed out several residences that he admitted that he had entered without permission taking items and this was one of them that he pointed out.

Case number 13-CR-25, that offense date is also August 27, 2012. Same offense date as case number 24. That is the home of Pamela Cooper . . . . The home was broken into without permission and the main item taken was a stove.

This is another house that law enforcement would testify the defendant pointed out as one he broke into and took items without permission.

Lastly, case number 13-CR-26, the same offense date of August 27, 2012. This is the home of June Fuller located . . . here in Lewisburg. It was broken into and a microwave was taken. This is yet another home that the defendant pointed out is one that he broke into.

I will say all of these homes, except for the Crabtree home, the defendant's cousin, were in close proximity to the residence that the defendant was staying at.

I think most people would say easy walking distance.

At the October 9, 2013 sentencing hearing, the State entered into evidence the defendant's presentence report, which listed three prior misdemeanor convictions: a 2006 conviction of domestic violence; a 2007 conviction of misdemeanor theft; and a 2011 conviction of shoplifting. The defendant was twice charged with violating his probation, most recently in November 2012, when the defendant was charged in the underlying cases.

Crystal Gray with the Tennessee Board of Probation and Parole testified that she prepared the defendant's presentence report. In preparing her report, Ms. Gray took a statement from the defendant, in which he denied committing any of the crimes to which he had pleaded guilty. Ms. Gray confirmed that the defendant had a previous history of criminal convictions, that he had previously failed to comply with the conditions of probation, and that he was on probation when he committed the offenses at issue.

Jason Crabtree testified that, following the burglary at his residence, he and his wife visited the defendant at his home to inquire whether the defendant had any knowledge of the burglary. While at the defendant's residence, Mr. Crabtree photographed the defendant's vehicle and later showed those photographs to a neighbor, who identified the car in the photographs as the one the neighbor had seen parked in the Crabtrees' driveway on the day of the burglary. Mr. Crabtree testified that his eight-year-old child had trouble sleeping after the burglary and that he "had to put in a security system, security cameras and guard dogs" to ensure that his child can sleep.

Virginia Gowan, the defendant's mother, testified for the defense. Ms. Gowan stated that her son had "always been a good worker" and that he had worked in a factory before being laid off from work. Ms. Gowan testified that, approximately four or five years ago, her son was injured at work and became dependent on pain medication. Ms. Gowan stated that, because the defendant had been unable to access the medication while incarcerated, she had seen positive changes in him. Ms. Gowan verified that the defendant would be able to work and would have a place to live if he were released from incarceration.

The defendant testified that, in 2009, he suffered "major head trauma" in a work-related incident, causing "a major concussion, knocked [his] teeth out, [and] messed [his] sinus cavity up." The defendant was prescribed increasingly higher doses of pain medication to control his migraine headaches, and he was eventually prescribed Xanax to aid

-4-

him in sleeping. The defendant admitted that he had become addicted to the medication. The defendant testified that he had been in jail for 370 days and that he had recently celebrated one year of sobriety. The defendant testified that he had contacted rehabilitation facilities and that he had completed substance abuse programs while incarcerated. The defendant admitted that he had battled depression and had attempted suicide in the past.

On cross-examination, the defendant denied committing all of the crimes to which he had pleaded guilty. The defendant admitted that, before his most recent arrest, he was spending "at least $140 a week" purchasing pain pills on the street. If the defendant did not have enough money to purchase 30 pills a day, he would resort to taking 30 to 40 Tylenol pills each day.

In determining the defendant's sentence, the trial court found that the defendant was a Range I offender and that three enhancement factors were primarily applicable: the defendant had a previous history of criminal convictions; the defendant before sentencing failed to comply with the conditions of sentencing involving release into the community; and the defendant was on probation at the time of the commission of the crimes. *See* T.C.A. § 40-35-114(1), (8), and (13). In addition, the court gave "a little bit of weight" to factor 10, that the crime was committed when the risk to human life was high, based on the defendant's attempt to burglarize the residence in case number 2013-CR-23. *See* T.C.A. § 40-35-114(10). The trial court considered as mitigation that the defendant's "criminal conduct neither caused nor threatened serious bodily injury." *See* T.C.A. § 40-35-113(1). Taking these factors into consideration, the trial court imposed the following sentences: in case number 2013-CR-22, four years for the aggravated burglary conviction; in case number 2013-CR-23, three years for attempted aggravated burglary and 11 months, 29 days to be served at 75 percent for vandalism and to be served concurrently to the three-year sentence; in case number 2013-CR-24, five years for aggravated burglary; in case number 2013-CR-25, five and one-half years for aggravated burglary and 11 months, 29 days to be served at 75 percent for theft and to be served concurrently to the five and one-half year sentence; and in case number 2013-CR-26, six years for aggravated burglary and 11 months, 29 days for theft to be served concurrently to the six year sentence. The trial court ordered that case numbers 2013-CR-22 and -23 be served concurrently to one another and that case numbers 13-CR-24, -25, and -26 be served concurrently to one another but consecutively to case numbers 13-CR-22 and -23 for a total effective sentence of 10 years.

With respect to the manner of service of the sentence, the trial court found as follows:

I will tell you this weighs heavy on the Court's mind, is we've had two prior probation revocations and we should have had a

third. Granted, they were misdemeanors, but that tends to indicate that he is not acceptable of what gift the Court gave him, and he is unable to comply with the conditions of even misdemeanor probation. And frankly, if you can walk and chew gum, you should be able to get through with that. So, therefore, I don't think probation is appropriate for him.

And I have considered everything that he's had to say today. I've also considered the pre-sentence report. And the pre-sentence report, I was concerned because he stood up here and he pled guilty, and then, he tells his pre-sentence officer that he didn't commit some of these and he waffles on some of the, some of the others. Which, you know, candor, in my mind, is a big thing to show that one may be successful or unsuccessful in any type of community release and that you take responsibility for what you have done.

To sit up here and plead guilty, whether it's a best interest plea or not, the end result is the same. And so, at some point, he's not being totally candid with the Court.

Now, having said that, I think the defendant's testimony read better than the pre-sentence report did. I mean, the pre-sentence report did not read well in my mind. His testimony was, was better I thought. And I understand the nature of the addiction, having clients that have been through the same processes. But it's not a justification, in the Court's mind, for breaking into people's houses. I feel there has been other measures less restrictive that has been, other than confinement, that has been applied to this defendant and they've been unsuccessful.

I think that also given the nature of the criminal activity here, that to give probation or alternative sentencing would depreciate the seriousness of the offense. And I think the sentence ought to be served in the Tennessee Department of Corrections.

On appeal, the defendant argues that the trial court abused its discretion by sentencing him to 10 years' imprisonment rather than considering alternative sentencing.

-6-

Specifically, the defendant contends that, because his criminal record contains only misdemeanor convictions, the "'totality of the circumstances' was such that this was no crime of such huge dimensions that justice would demand such a sentence imposed on the defendant." The State argues that the record fully supports the trial court's sentencing decision in this case.

"[A]lthough the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.*

Despite the new standard of review, trial courts must still consider the principles of sentencing enumerated in Code section 40-35-210(b), *see Bise*, 380 S.W.3d at 698 n.33 (citing T.C.A. § 40-35-210(b)), 706 n.41, and must, as required by statute, consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)).

The imposition of a 10-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a), (b). Traditionally, however, the defendant has born the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "'subserve the ends of justice and the best interest[s] of both the public and the defendant.'" *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956)), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Recently, however, the supreme court expanded the holding in *Bise* to the trial court's decision regarding probation eligibility, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In the instant case, the record reflects that the trial court based its sentencing decision on the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

*Id.* The trial court specifically found, under subsections (B) and (C), that the nature of the criminal activity was such that alternative sentencing "would depreciate the seriousness of the offense" and that measures less restrictive than confinement "have been applied to this defendant and they've been unsuccessful." Taking all of this into consideration, we find no abuse of discretion in the trial court's decision to order the defendant to serve his sentence in confinement.

Accordingly, the judgments of the circuit court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE